IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TINA MONROE, an individual, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT and** |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| STATE OF NEBRASKA and the | ) | |
| NEBRASKA DEPARTMENT OF | ) | |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, Tina Monroe, by and through her attorneys, and for her Complaint and causes of action against Defendants states as follows:

1. This is an action seeking redress for violations of rights guaranteed to Plaintiff by the Nebraska Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act (ADEA), the Nebraska Discriminatory Wage Practices Based on Sex Act, and the Equal Pay Act.

2. This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over the state law claims.

3. At all times relevant herein Plaintiff Tina Monroe was a resident of the State of Nebraska.

4. Plaintiff is female, black, and was born in 1965.

5. Defendants are the State of Nebraska and its agency the Nebraska Department of Veterans Affairs and are properly named pursuant to the statues set forth herein.

6. The unlawful employment practices complained of herein took place in the state of Nebraska.

7. The Plaintiff filed timely administrative actions with Nebraska Equal Employment Opportunity Commission and the Equal Employment Opportunity Commission, and has fulfilled the administrative prerequisites to filing the instant timely action.

8. Plaintiff is an RN with extensive experience working in long-term care facilities, including in administrative and supervisory positions such as Director of Nursing.

9. Plaintiff applied for administrative and supervisory nursing positions with the State of Nebraska Department of Veterans Affairs in late 2019.

10. Plaintiff was hired by Defendants on December 30, 2019. She was not offered a supervisory position but rather hired as a floor RN.

11. During the same period a white male nurse in his thirties, Nick Rhiley, was hired into a supervisory position. Mr. Rhiley had significantly less nursing experience than Plaintiff.

12. Plaintiff was hired to work at the Central Nebraska Veterans Home ("the Home"), a home owned and under the control of the Nebraska Department of Veterans Affairs and the State of Nebraska.

13. Plaintiff worked during the time period of the initial COVID-19 breakout in early 2020 and during the pandemic until she was unlawfully discharged on April 8, 2021.

14. During the time period of Plaintiff's employment the Home experienced serious staffing shortages. The Home offered triple overtime to whomever would work overtime. It also employed agency nurses and CNAs to attempt to fill the gaps, but agency staff was not allowed to "hold over" after their assigned shift.

15. Despite the Home being seriously understaffed Plaintiff was subject to counseling and discipline by the Defendants for working overtime.

16. Plaintiff was also subjected to different terms and conditions of employment when the Director of Nursing, Debra Black, made her fill out overtime forms while a similarly situated white male in this thirties, Nick Rhiley, did not have to fill out these forms under the same circumstances.

17. Plaintiff discovered in approximately January 2021 that Nick Rhiley was not required to fill out the forms and confronted Ms. Black, only then did the Ms. Black ask him to begin filling out overtime forms.

18. No one other than Plaintiff was placed on a performance improvement plan related to overtime and no other employee was disciplined for alleged abuse of overtime during the timeframe of COVID-19 and Plaintiff's employment.

19. Plaintiff was subject to a performance improvement plan and progressive discipline related to overtime despite the fact that Plaintiff was holding over because people were no shows for shifts and there was no one to staff the units at the Home.

20. Despite Ms. Black finding that Plaintiff was a good nurse, dedicated, willing to share information, good at training non-professional staff, very caring and went above and beyond with patients; Ms. Black was seeking to terminate Plaintiff and was taking steps to do so as early as July or August of 2020 on the alleged basis of her use of overtime.

21. Jimmy Vann was hired by the Home to work as a certified nursing assistant (CNA) in 2020.

22. Multiple nurses made complaints to Ms. Black, regarding Mr. Vann's work performance indicating that he was not providing appropriate care to the members of the Home.

23. On December 4, 2020, Ms. Black sent Plaintiff an email telling her not to pre-pour medications and make sure her mediation cart was locked and to watch her body language towards Mr. Vann as he felt like she was "targeting him".

24. Ms. Black testified that the email was a follow-up because Jimmy Vann and his girlfriend, another employee of Defendants, had made a complaint about the medication cart not being locked and Plaintiff pre-pouring medications. Ms. Black sent the email to Plaintiff despite undertaking an investigation of Mr. Vann's various allegations regarding Plaintiff and found all of such allegations to be unfounded.

25. On or around December 11, 2020, in retaliation for complaints Plaintiff made about his work performance, Mr. Vann made a report to Adult Protective Services ("APS") alleging Plaintiff abused or neglected residents at the Home. The allegations to APS were essentially the same allegations made to and investigated by Ms. Black.

26. APS contacted Ms. Black regarding Vann's allegations and she was aware of the APS investigation as early as December 14, 2020.

27. Ms. Black was interviewed several times by APS and provided some documentation to APS, but did not provide any documentation of her investigation that indicated that all of Mr. Vann's allegations regarding Plaintiff were unfounded.

28. Plaintiff was completely unaware of Mr. Vann's allegations or the resulting investigations by the Home and APS despite procedures adopted by the Home that indicate that in cases where abuse or neglect is reported the worker in question should be informed of the allegation and sent home until the investigation was completed. In neither the instance where Mr. Vann made the report and Ms. Black investigated; nor when APS commenced its investigation, was Plaintiff informed by Ms. Black of the allegations and investigation, and Plaintiff was never given an opportunity to respond to such allegations.

29. On or around September 29, 2020, Plaintiff applied for Associate Director of Nursing in the Delta unit of the Home. She was not interviewed for the position despite meeting all requirements for the position.

30. On or around late December 2020 or early January 2021, Plaintiff was informed that a white female had received the job of Associate Director of Nursing of the Delta unit. About the same time, Plaintiff was told by Nick Rhiley that he was offered the job despite not even having applied for it.

31. On or around December 13, 2020, Plaintiff applied for an Associate Director of Nursing position in the Alpha unit of the Home. She again did not get an interview for this position and was later informed the position was given to a white female.

32. On March 12, 2021, Plaintiff was called into a meeting with Ms. Black and a representative of Human Resources, Kim Mostek. In the meeting allegations were made that Plaintiff threatened a charge nurse sometime back in January or February of 2021. The alleged incident was placed on a performance evaluation despite the nurse in question denying that Plaintiff had said anything like that to her.

33. Also on March 12, 2021, Plaintiff was suspended without pay while Ms. Black and Ms. Mostek investigated her for allegedly having a "agency substantiated" case on the APS central registry. On March 12, 2021, Plaintiff did not even know she was being investigated by APS or that she been placed on the central registry. The basis of the APS action was the same allegations made by Mr. Vann and found to be without merit by Ms. Black back in December 2021.

34. On April 8, 2021, Plaintiff received a termination letter stating the allegations against her were substantiated and she was on the APS central registry. However, Ms. Black and others in management knew the allegations against Plaintiff were false based on their own investigation.

35. Plaintiff appealed the APS findings and the entry onto the central registry. The allegations and findings of APS were found to be without merit and the entire decision to place Plainitff on the central registry was reversed.

36. At all times alleged herein Defendants' employees were acting within the course and scope of their employment with Defendants regarding all unlawful actions set forth herein.

37. Plaintiff was discriminated against in the terms, conditions, and privileges of her employment and a motivating factor of the Defendants' were Plaintiff's race, gender, and age.

38. As a result of the illegal conduct set forth herein, Plaintiff has sustained compensatory damages, lost wages and the value of job related benefits and will continue to incur future lost income and the value of job related benefits into the future. Plaintiff has also sustained other damages not specifically set forth herein.

## COUNT ONE

39. Plaintiff incorporates paragraphs 1 through 38 as if fully set forth herein.

40. Plaintiff's gender was motivating factor in Defendants treatment and adverse employment actions directed to Plaintiff. Said conduct is violative of the Nebraska Fair Employment Practices Act and Title VII of the Civil Rights Act as amended.

41. As a result of Defendants' illegal actions set forth herein, Plaintiff sustained lost wages and the value of job related benefits, interest thereon and will continue to incur such damages into the future.

42. Insofar as Defendants conduct was willful, punitive damages are appropriate under Federal law.

## COUNT TWO

43. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Plaintiff's race was motivating factor in Defendants treatment and adverse employment actions directed to Plaintiff. Said conduct is violative of the

Nebraska Fair Employment Practices Act and Title VII of the Civil Rights Act as amended.

45. As a result of Defendants' illegal actions set forth herein, Plaintiff sustained lost wages and the value of job related benefits, interest thereon and will continue to incur such damages into the future.

46. Insofar as Defendants conduct was willful, punitive damages are appropriate under Federal law.

## COUNT THREE

47. Plaintiff incorporates paragraphs 1 through 46 as fully set forth herein.

48. The Plaintiff's age was a motivating factor in Defendants' decisions regarding hiring, promotions and discipline of Plaintiff and such discriminatory acts are violative of the Age Discrimination in Employment Act.

49. As a direct and proximate result of the Defendants' aforementioned illegal conduct, Plaintiff has suffered significant lost wages and value of benefits, will incur lost wages into the future and the continued loss of fringe benefits the total sum which will be pled when ascertained.

50. To the extent Defendants' actions were willfully and intentionally done in violation of the Federal law referenced herein, liquidated damages, prejudgment interest and all other damages under Federal law are appropriate.

## COUNT FOUR

51. Plaintiff incorporates paragraphs 1 through 50 as if fully set forth herein.

52. Upon information and belief, the female Plaintiff was paid a lower hourly rate than a similarly situated male employee performing the same work under the same or similar conditions as Defendants' male employee. Such conduct is violative of the Nebraska Fair Employments Practices Act, the Discriminatory

Wage Practices Based Upon Sex Act, and the Equal Pay Act, and Title VII of the Civil Rights Act as amended.

53. As a direct and proximate result of the Defendants' aforementioned illegal conduct, Plaintiff sustained compensatory damages and incurred significant lost wages and value of benefits and will continue to incur lost wages and the value of fringe benefits into the future the total sum of which will be specifically pled when ascertained.

54. Due to the willful and/or reckless nature of Defendants' unlawful treatment of Plaintiff punitive damages are appropriate under Federal law and liquidated damages are appropriate under state and Federal law.

WHEREFORE, Plaintiff respectfully requests this Court assume jurisdiction herein and grant the following relief:

a. Declare the conduct of Defendants to be violative of the rights of the Plaintiff under the appropriate state or Federal laws;

b. Direct the Defendants to reinstate the Plaintiff to her previously held position with all back wages and value of job related benefits and interest thereon; or find reinstatement is not appropriate and award her front pay and the value job related benefits into the future;

c. Award Plaintiff prejudgment interest;

d. Award Plaintiff compensatory damages for pain, suffering, inconvenience, damage to reputation and humiliation as allowed by law;

e. Award punitive, double, treble, and/or liquidated damages as allowed by law;

f. Award Plaintiff attorney fees and costs;

g. Award Plaintiff such other and further relief as the Court deems just and reasonable and appropriate to correct the wrong done to Plaintiff.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a trial by jury.

DATED this 19th day of July, 2022.

                TINA MONROE, Plaintiff

                By: */s/ Julie A. Jorgensen*
                      Julie Jorgensen
                      EVANS AND DIXON, LLC
                      11422 Miracle Hills Dr., Ste. 400
                      Omaha, NE 68154
                      (402) 951-7228
                      (314) 884-4541 (Fax)
                      jjorgensen@evans-dixon.com
                      *Attorneys for Plaintiff*

17277-1/5412469